BREAUX, G. J.
Plaintiffs sued the defendant for $3,000 on a verbal contract of sale of a cane-loading machine, which the former averred they had sold to the latter.
The ease was tried by a jury, which returned a verdict for the amount sued for.
The son of Mr. Callegan, one of the plaintiffs, invented a device to relieve cane growers of much of the hard work they have to do in loading canes to be taken to the mill.
The plaintiffs are practical cane growers who had been favored with a fair share of success as farmers. They had experience in planting and hauling sugar cane.
The young son, who was of a mechanical turn of mind, originated the idea of building the machine, and interested his father in the project and also his father’s partner to such an extent that the latter advanced money to finance the invention.
As they were not mechanics, they could not give practical shape to the invention. They lived near an expert blacksmith and mechanic, upon whom they called and with whom they conversed freely about the invention.
The three, the two plaintiffs and the blacksmith, agreed to go into the venture jointly.
Machines were constructed by the blacksmith, and he was not slow in discovering that there were promising features in the invention.
Having gained considerable confidence in the future of the enterprise, they applied to the government for a caveat, which was issued and which gave them protection for 12 months.
There were other cane-loading machines in the neighborhood — possibly not better than the one in question.
It may as well be stated here that the father and son acted jointly, and that the *822 father is plaintiff really in the interest of the son.
The expert blacksmith does not seem to have been slow in taking advantages of his associates in the venture.
They sold two of the machines at $500.
Afterward the blacksmith called upon plaintiffs and offered to each the amount of $1,500, he states, on condition that they would obtain a patent for the machine.
The buyer, as appears in the evidence, was Oastagnos, "or some one else,” as expressed in the testimony.
It is unfortunate that in the negotiations among these parties there was such looseness. It renders it difficult to determine just what was agreed upon.
Oastagnos, the blacksmith and mechanic above mentioned, testified that at the expiration of the term of the caveat, which had been issued in favor of all three of the interested persons, he called upon the plaintiffs to join him and act with him in applying for a patent, and that he sought to impress them with the importance of applying for and obtaining a patent. He says that they were not willing. They gave him no encouragement. Finally (to get rid of him, he states) they promised to meet him at a particular-time and place, which promise they failed to keep, and he says further that they actually refused to have anything to do with obtaining a patent.
He then applied for a patent in his own name. His conclusion was that he must act for himself in his own interest.
He did not have the required cash, and Guyton, the defendant, advanced it to defray expenses.
While the patent was applied for in the name of Oastagnos, as above mentioned, it was issued in the name of Oastagnos and the defendant Guyton.
Plaintiffs testified that they accepted the $1,500 offered by Guyton, the defendant, but that they sold the machine just as it was at the time; that they made no promise about obtaining a patent; that the sale was complete by the delivery of a machine.
The defendant and the witness, Oastagnos, swear to the contrary — that there was a condition as above expressed.
It is in evidence that Oastagnos said to the young son before mentioned that he had applied for a patent; that the two plaintiffs nor the son ever called upon defendant for anything.
The young man said that at a certain time he called on defendant at the latter’s residence, that he was absent, and the matter of calling for the price of the machine seems to have received no further attention. Plaintiffs and young Oallegan had no dealings with defendant, Guyton, at all. If there is any obligation on the part of the defendant, it must have arisen through the acts of 'Oastagnos as a special agent or one authorized to make an offer for the invention.
Oastagnos testified that Guyton authorized him to make the offer of $1,500 to plaintiffs, before mentioned, provided a patent was obtained, for, as defendant had stated to him at the time, without a patent the machine would be of no value to him. To use the words of the witness ‘‘If they,” referring to plaintiffs, “got a patent, they would get the money.”
It is a part of the history of the case that after Oastagnos and the defendant obtained a patent they formed a corporation, and Guy-ton became the owner of 51 shares and Oastagnos of 48 shares, and a third person, in order to become a nominal stockholder to enable them to organize, became the owner of 1 share.
About that time Guyton put in $10,000.
According to the testimony of Oastagnos, before the patent was issued and afterward, he improved the machine very much from what it was when owned by the three, to *824 wit, the plaintiffs and Castagnos. He added several devices to it. He also stated that he put all the pieces together, built the machine, and did all the mechanical work in putting the machine together. 1-Ie also swore that the machines constructed at the factory belonging to the corporation before mentioned, known as the Castagnos’ cane loaders, are a great improvement on the Gauthreaux and Callegan machine; that the machines originally sold and delivered to Trahan & Daigle were sent back to him to be rebuilt as they did npt operate satisfactorily at first; that he had to remodel them entirely and put them up anew. It was due entirely to him that they were a success.
The defendant, Guyton, testified that the original machine is not the same as relates to usefulness.
As well state here also that Guyton’s interest was transferred to him by Castagnos.
The defendant also testified at some length, and stated that he had seen the machine in operation, and it occurred to him if patented it would prove a good investment; that he sent word to Castagnos by Anclin that, if Castagnos and the plaintiffs chose to apply for a patent covering the machine, he would buy their interest; that some time thereafter he met Castagnos. He repeated the words transmitted through Anclin.
(The name of Anclin is mentioned here only to state that he as a witness corroborates the defendant.)
Defendant further states that he said to Castagnos that he would buy the interest of both and not the interest of one, for he was determined to have the controlling interest if he ventured to buy it at all.
He also testified that Castagnos some time •afterward told him that only one of the partners would consent to sell; that he then abandoned the idea of dealing further with the plaintiffs.
In this he is corroborated by Castagnos.
By that time the caveat had expired.
Others in the cane-loading business knew of the machine, and were ready to avail themselves of the opportunity to obtain a patent thereon. It was then that he accepted the offer made to him by Castagnos. He advanced the money to obtain the patent, and they organized, as before mentioned.
It is an incident of the case, as stated in the evidence, that others at the time were threatening prosecution for infringement on the patent, so that it became necessary to obtain a patent in order to put an end to the annoyances of others engaged in the same business.
The defendant also swore: That the machine sold by the Castagnos Loader Company is practically a new machine.
That a Mr. Gates complained of an infringement of clutches used on the patented machine, and had employed attorneys to institute suit against defendant, and for that reason Castagnos invented an entirely new machine.
That was about the time a patent was obtained.
He also testified that, when he went into the business, the caveat had expired and no patent had been obtained.
It is in place to state that defendant as a witness insists that he never proposed to buy the machine from the two plaintiffs exclusively without reference to a patent, and in this he is corroborated by Castagnos and by the facts and circumstances of the proposed purchase.
He also testified that he never knew that the machine transferred by Castagnos to the corporation, on which he obtained a patent, was the same machine as that made by plaintiffs.
Discussion, Decision, and Decree.
At the inception, in giving consideration to the issues between the parties, it became-apparent that the good faith of the defend *826 ant is not put at issue. Fraud and conspiracy are not charged.
The preponderance of the evidence is that the defendant did not offer to buy the machine exclusively. He always said that he must be protected by a patent before he would pay the price. He always stated that, unless patented, he did not wish it. The subject of the patent was talked about. The plaintiffs did not agree to expend anything toward getting a patent.
The witness Oastagnos conducted all the negotiations.
Whatever advantage he has taken of those with whom he was interested in the machine was for his account and not for that of the defendant, who, so far as the record discloses, was a third person. Defendant certainly had no interest in the machine. He could not be compelled to buy except on his own terms and conditions. When the expert blacksmith came to him and told him that the plaintiffs had declined to accept his price for a patented machine, he had a perfect right to drop the matter entirely.
It devolved upon plaintiffs to protect themselves from the bad faith of their associate in the venture. They could not impose that duty on the defendant.
Law deals with legal obligations.
After the caveat had expired, the defendant was not liable on the ground that he knew something of the agreement among the different owners of the machine.
The evidence upon that subject is very weak. Indeed, it is very evident that the parties originally dealt with each other without much agreement of any kind, and therefore it would be forcing a point to hold that the defendant knew of any agreement or of the relations of the parties among themselves.
At this point, for the purpose of illustration, let us suppose that, after the caveat had expired, the defendant had applied for a patent on the machine entirely in his own name. He would not then have become liable to plaintiffs only for the reason that he had previously offered to buy on conditions that had not been accepted.
Plaintiffs, who have an improved machine, must protect themselves by applying for either a caveat or a patent, and, if they fail in this, it is only in case of dire fraud and imposition that they can have recourse against a third person who chooses to have a machine patented, particularly,- as in this case, if, for the purpose of obtaining a patent, there had been improvements made which rendered the machine different and far more useful than it was in its original condition.
If persons fail to protect themselves and rely on mere loose talk, and do not insist upon agreement in regard to their rights, they cannot hold others liable who choose to act as defendant has acted in this instance.
To go -back to the original proposition for an instant, the petition of plaintiffs and the evidence in the case lead to the one inference: That a patent was a sine quo non to the contract.
It is asserted by plaintiffs that the defendant’s offer was based on the idea that he would buy the machine provided it was such a machine as could be patented.
The evidence does not sustain that theory. That would have been an additional condition. It is not proven.
Again, the amount to obtain a patent, we infer from _ the evidence, would have been from $250 to $300.
If the defendant was to pay that additional amount, it should have been made to appear by the testimony.
To return to another original proposition: Plaintiffs testified that they were offered $1,500 apiece for the machine. Nothing is stated about Oastagnos, who was entitled to one-third of the price. They do not seem to have been concerned about him, but about themselves.
*828 Whether the price was $3,000 or $4,500 is not made evident.
They had already received $500 on account. It does not appear that Gastagnos had received anything or that plaintiffs were concerned about his receiving anything.
We have not found that plaintiffs have proven such a legal tie as against the defendant, Guyton, as would justify us in rendering a judgment in their favor.
For reasons stated, the verdict and judgment in this ease are avoided, annulled, and reversed, at plaintiffs’ costs in both courts, and suit dismissed.